UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-63117-CIV-WILLIAMS/VALLE

BANK OF AMERICA, N.A.,

    Plaintiff,

v.

THE HOUSE OF DENTISTRY, P.A., and
TIMOTHY BRYAN HOUSE,

    Defendants.

_____

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment (the "Motion"). (ECF No. 11). United States District Judge Kathleen Williams has referred the Motion to the undersigned for a Report and Recommendation. *See* (ECF No. 12). The undersigned has reviewed the Motion, the record in the case, and is otherwise fully advised. For the reasons set forth below, the undersigned respectfully recommends that the Motion be **GRANTED IN PART**.

### I.    BACKGROUND

On December 19, 2019, Plaintiff Bank of America, N.A. filed a two-count Complaint against Defendants The House of Dentistry, P.A. ("THOD") and Dr. Timothy Bryan House ("Dr. House") (together, "Defendants"), alleging breach of contract by THOD (Count I) and breach of guaranty by Dr. House (Count II). *See generally* (ECF No. 1) (the "Complaint"). More specifically, the Complaint alleges that on or about May 15, 2014, Plaintiff and Dr. House DDS, as a sole proprietorship and as borrower, executed a Project Finance Term Loan Agreement (the "Term Loan Agreement") for a $425,000 loan (the "Loan"). *Id.* ¶ 10. The Term Loan Agreement also included a personal guaranty by Dr. House (the "Guaranty") and a Security Agreement in favor of

Plaintiff. *Id.* Subsequently, the parties executed another document that replaced the borrower from the sole proprietorship to THOD and increased the loan amount to $507,415.43 (the "Loan Schedule"). *Id.* ¶ 11. On or about February 13, 2019, THOD and Plaintiff executed a Loan Modification Agreement (the "Loan Modification"), in which, among other things, the parties fixed the interest rate at 6.75%, effective February 1, 2019.[1] *Id.* ¶ 13; *see also* (ECF No. 1-4 at 1). In addition, Dr. House ratified the Loan Modification and his prior personal Guaranty. (ECF No. 1 ¶ 14).

According to the Complaint, beginning October 1, 2019, THOD failed to make the required loan payments. *Id.* ¶ 16. Defendants also failed to provide Plaintiff with 2016, 2017, and 2018 personal and business tax returns of THOD and Dr. House. *Id.* ¶ 17. The Complaint further alleges that these failures constitute default (the "Events of Default") under paragraphs 23(f) of the Term Loan Agreement and paragraph 3.2 of the Loan Modification. *Id.* ¶ 18. Pursuant to the Events of Default, Plaintiff exercised its right to accelerate the total debt and declared the Loan to be immediately due and payable. *Id.* ¶ 19. Additionally, Plaintiff exercised its right to institute default interest (at a higher rate), pursuant to paragraphs 12.22, 24.B(iii) and 47(e) of the Term Loan Agreement, effective November 20, 2019. *Id.* ¶¶ 20, 21.

Upon filing the Complaint, the outstanding debt on the Loan was $520,640.36, plus attorneys' fees and costs.[2] *Id*. ¶ 27. On September 17, 2020, however, in a Supplement to the Motion, Plaintiff advised the Court that Defendants have since paid $15,000 toward the outstanding

---

[1] Collectively, these documents (i.e., the Term Loan Agreement, the Loan Schedule, and the Loan Modification Agreement) will be referred to as the "Loan Agreement."

[2] This amount consists of $487,688.88 in principal, $8,926.52 in regular interest, $1,422.43 in default interest, and the following sums in the Loan Modification: (i) $17,069.65 in deferred regular interest; (ii) $3,582.88 in deferred default interest; and (iii) $1,950 in attorneys' fees and costs. (ECF No. 1 ¶ 27). In addition, interest accrued at the combined rate of $155.78 per diem. *Id.*

debt. (ECF No. 16 at 1). According to Plaintiff, this payment has been credited to Defendants and the debt has been adjusted as follows: $484,688.88 in principal, $38,613.50 accrued regular interest, $19,910.47 in accrued default interest, plus of $4,225.00 in attorneys' fees and $545.30 in costs, totaling $543,212.85 (as of September 16, 2020), plus regular and default interest at a combined per diem rate of $154.83. *Id.* at 2, 6.

According to the Return of Service, Plaintiff properly served the Summons and Complaint on Dr. House personally and as Registered Agent for Defendant THOD on January 6, 2020. (ECF Nos. 6, 7, 11). Despite proper service, Defendants failed to timely answer or otherwise respond to the Complaint. (ECF No. 11 at 1). Consequently, on March 11 and March 12, 2020, the Clerk of Court entered a Clerk's Default against both Defendants.[3] (ECF Nos. 10, 17). The instant Motion for default judgment followed. (ECF No. 11). To date, Defendants have not defended against the litigation or responded to the Motion.

## II.   LAW AND DISCUSSION

### A.   Plaintiff has Established a Basis for Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining a default judgment against a defendant. *Abreu v. Free Flow Constr., Inc.*, No. 18-20244-CIV, 2018 WL 6492902, at *1 (S.D. Fla. Oct. 11, 2018), *report and recommendation adopted*, No. 18-20244-CIV, 2018 WL 6492904 (S.D. Fla. Oct. 30, 2018); Fed. R. Civ. P. 55. First, the Clerk of Court may enter a Clerk's Default when a defendant fails to plead or otherwise defend a lawsuit. *See* Fed. R. Civ. P. 55(a). Thereafter, the court may enter a final default judgment against the defendant. *See* Fed. R. Civ. P. 55(b).

---

[3] Despite the March 11, 2020 date displayed on the docket, the Clerk's Default against Dr. House was docketed on December 21, 2020. *See* (ECF No. 17).

3

A defendant who defaults "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[4]  A defaulting defendant, however, does not admit any facts that are pleaded insufficiently or that are mere conclusions of law. *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019) (citing *Nishimatsu*, 515 F.2d at 1206); *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-60973, 2010 WL 1416979, at *1 (S.D. Fla. Apr. 7, 2010).  Accordingly, because a defendant admits only those facts that are well pled, the default itself does not create the basis for a court's entry of final default judgment. *Nishimatsu*, 515 F.2d at 1206.  Rather, a court must determine whether the factual allegations are well pled and present a sufficient basis for the judgment. *Id.*  Thus, a motion for default judgment "is not granted as a matter of right." *Anda, Inc. v. Gramatan Pharmacy, Corp.*, No. 18-CV-62704, 2019 WL 5209318, at *1 (S.D. Fla. July 16, 2019) (quoting *Patray v. Nw. Pub., Inc.*, 931 F. Supp. 865, 868 (S.D. Ga. 1996)).

Here, based on the uncontroverted facts in the record, the undersigned finds that Defendants, having been properly served, failed to answer or otherwise respond to the Complaint. Moreover, as discussed below, the undersigned finds that the Complaint sufficiently states a claim for breach of contract by THOD (Count I) and breach of guaranty by Dr. House (Count II). Accordingly, the undersigned recommends that Plaintiffs' Motion be **GRANTED** on Counts I and II.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981.

### B.      Plaintiff has Sufficiently Pled a Breach of Contract Claim (Count I)

Count I of the Complaint alleges breach of contract against THOD.  To state a claim for breach of contract, a plaintiff must show that: (i) a contract exists; (ii) a material breach occurred; and (iii) damage resulted from the breach.  *See Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir.1999) (applying state law).[5]  Here, the Complaint sufficiently alleges: (i) the existence of an agreement between the parties, (ECF No. 1 ¶¶ 10-15); (ii) a material breach by Defendants in failing to pay the Loan and not supplying the required tax returns, *id.* ¶¶ 16-18; and (iii) resulting damages to Plaintiff, *id.* ¶¶ 24-31. Thus, Plaintiff has sufficiently pled the elements of a breach of contract action.

Moreover, District Courts need not conduct a hearing on damages prior to entering a default judgment "where all essential evidence is already of record." *Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 393 (11th Cir. 2018).  Here, the record contains two affidavits from Kenneth Cowan, Plaintiff's Assistant Vice President and Loan Portfolio Officer, in which Mr. Cowan attests to the amounts owed and the method of calculation.  *See generally* (ECF Nos. 11 at 19, 16 at 5) (the "Cowan Affidavits").  Based on this, the undersigned has sufficient evidence to determine damages without the need for a hearing.  Accordingly, having reviewed the Complaint and the underlying record, the undersigned finds that the well-pleaded allegations of the Complaint, taken as true by virtue of the default, sufficiently state a cause of action for breach of contract and for the relief sought.

---

[5] According to para. 30 of the Term Loan Agreement, Florida law applies to this case as Florida is the Borrower's principal place of business.  *See* (ECF No. 11 at 8).

### C. Plaintiff has Sufficiently Pled a Breach of Guaranty Claim (Count II)

Count II alleges a breach of guaranty by Dr. House. "A cause of action for breach of a guaranty agreement arises upon default and a subsequent refusal to pay by the guarantor." *Ocean Bank v. M/Y ANDREA DEL MAR*, No. 1:16-CV-21512-JLK, 2017 WL 7794596, at *2 (S.D. Fla. Aug. 18, 2017) (citing *Brunswick Corp. v. Creel*, 471 So. 2d 617, 619 (Fla. 5th DCA 1985)) (internal citations omitted). Moreover, "[w]here the guaranty is absolute, the guarantor becomes liable upon nonpayment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Id.* (citing *Mullins v. Sunshine State Service Corp.*, 540 So. 2d 222, 223 (Fla. 5th DCA 1989)). The guarantor is "jointly and severally liable for any deficiency owed thereunder, in addition to the initial debtor." *Id.* (citing *Flagship Bank of Orlando v. Bryan*, 384 So. 2d 1323, 1324 (Fla. 5th DCA 1980)).

Here, the Complaint alleges that Dr. House executed a Guaranty to secure the Loan Agreement and consented to all modifications of the Loan Agreement. (ECF No. 1 ¶¶ 10-14). Furthermore, pursuant to the Guaranty, Dr. House is jointly and severally liable with THOD for the Loan. *Id.* ¶ 22. Moreover, the Complaint alleges that THOD defaulted on the Loan Agreement and that Plaintiff sent Dr. House and THOD a demand letter for full repayment of the amount due on the Loan. *Id.* ¶¶ 16-18, 23. Lastly, the Complaint attaches the Loan Agreement, the executed Guaranty, Dr. House's consent to the modifications, and the demand letter. (ECF No. 1-4).

Here, the Loan Agreement and the Cowan Affidavits provide sufficient evidence of damages. Thus, the undersigned need not conduct a hearing to determine damages. (ECF Nos. 11 at 19-57, 16 at 5-9); *see also S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record."). Accordingly, having reviewed the

Complaint, the Loan Agreement, and other evidence in the record, the Court finds that the well-pleaded allegations in the Complaint state a substantive cause of action for breach of guaranty and for the relief sought.

### D. Plaintiff is Entitled to Attorneys' Fees and Costs

In the Motion, Plaintiff seeks $4,225 in attorneys' fees based on: (i) a fixed rate for legal services rendered between January 8, 2019 and January 15, 2020; and (ii) counsel's hourly rates for services rendered between January 16, 2020 and March 15, 2020. *See generally* (ECF No. 11 at 2, 66-73). Plaintiff also seeks $535.30 in costs. *Id.* at 66, 71.

#### *1. Entitlement to Attorney's Fees*

Having determined that Plaintiff is entitled to a default judgment, the undersigned next considers Plaintiff's request for attorneys' fees and costs. *See id.* at 3. Under the "American Rule," litigants generally are not entitled to an award of attorneys' fees for prevailing in litigation unless provided by statute or contract. *See, e.g., In re Martinez*, 416 F. 3d 1286, 1288 (11th Cir. 2005). Here, the Term Loan Agreement provides for the award of fees and costs to the prevailing party in a dispute arising under the Agreement. *See* (ECF No. 11 at 31) (Term Loan Agreement ¶ 22(c), providing for "reasonable fees and costs of attorneys employed by Lender for any purpose related to this Agreement or the Indebtedness, including . . . prosecuting or defending any proceedings . . . [s]uch [as] any . . . collection . . . [or] civil action . . . in which Lender pursues or prevails . . ."). Accordingly, under the terms of the parties' contract and as the prevailing party by default judgment, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

#### *2. The Lodestar Method of Determining Reasonable Fees*

In assessing the reasonableness of a request for attorneys' fees in the Eleventh Circuit, courts use the "lodestar" method to calculate an objective estimate of the value of an attorney's

services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428. When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis" or reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-24356-Civ, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based on billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins,* 548 F.3d at 1351. Finally, Courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, in awarding attorney's fees, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

        3.      Reasonable Hourly Rates

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)); *see also Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1350 (S.D. Fla. 2006). The relevant market is "the place where the case is filed." *Barnes*, 168 F.3d at 427 (citation omitted).

Here, the relevant legal community is South Florida. Plaintiff seeks an award for legal services rendered by attorneys Deborah O'Brien Daly, Natalia G. Griesbach, and Allison Pietras, all with the law firm L&G Law Group, LLP ("L&G"). *See* (ECF No. 11 at 66-67). Attorney Daly is a partner at L&G and has been practicing law for 29 years, specializing in commercial and general litigation. *Id.* Furthermore, a review of the Florida Bar website reveals that attorney Daly graduated from Chicago-Kent College of Law in 1992. She is a member of the Florida and the Illinois Bar and is also admitted to practice before the U.S. District Courts for the Middle District of Florida and the Northern District of Illinois, the U.S. Court of Appeals for the Eleventh and the Seventh Circuit, and the U.S. Supreme Court. *See* https://www.floridabar.org/directories/find-mbr/profile/?num=580651 (State Bar of Florida, Member Profile of Deborah M.R. O'Brien Daly (last visited January 19, 2021)). Attorney Daly bills at an hourly rate of $350.

Attorney Griesbach is also a partner at L&G, and also bills at $350 per hour. (ECF No. 11 at 67). She has been practicing law for 18 years, representing financial institutions in workouts and commercial litigation nationwide. *Id.* According to the website for Attorney Registration of the Supreme Court of Illinois, attorney Griesbach has been admitted to the State Bar of Illinois since 2002. *See* https://www.iardc.org/ldetail.asp?id=418122432 (Lawyer Registration Profile of Natalia Rzepka Griesbach (last visited January 19, 2021)). According to the L&G firm website, attorney Griesbach attended Chicago-Kent College of Law and graduated in 2002. The website lists attorney Griesbach as being admitted to practice before the U.S. District Court for the Northern and Central District of Illinois and the U.S. Court of Appeal for the Seventh Circuit. *See* https://www.lgcounsel.com/?page_id=3215 (Attorney Profile of Natalia Griesbach on L&G website (last visited January 19, 2021)).

Lastly, attorney Allison Pietras was a senior associate at L&G, billing at an hourly rate of $325. Attorney Pietras has been practicing for 10 years, representing financial institutions in workouts and commercial ligation nationwide. (ECF No. 11 at 67). According to the website for Attorney Registration of the Supreme Court of Illinois, attorney Pietras was admitted to the State Bar of Illinois in 2010, and currently works for Bank of America N.A. *See* https://www.iardc.org/ldetail.asp?id=421220512 (Lawyer Registration Profile of Allison Elyse Kahrnoff Pietras (last visited January 19, 2021)). Moreover, attorney Pietras' LinkedIn profile shows that attorney Pietras graduated from the University of Wisconsin Law School in 2010. *See*https://www.linkedin.com/in/allisonkahrnoff/ (LinkedIn Profile of Allison (Kahrnoff) Pietras (last visited January 19, 2021)).

In determining reasonable hourly rates in the relevant legal market, the undersigned may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) (the "*Johnson* factors").[6] Additionally, the undersigned "may consider [her] own knowledge and experience concerning reasonable and proper fees and may

---

[6] The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

The undersigned has considered the relevant *Johnson* factors, and has reviewed counsel's affidavits, the time records and submissions attached to the Motion, and the record in this case, including Plaintiff's Notice of Previously Awarded Fees and Costs for the same Plaintiff and attorneys as in this case. (ECF Nos. 11 at 66-73, 15). Based on this review, and the Court's own judgment and experience, the undersigned finds that $350 and $325 are reasonable hourly rates for attorneys Daly, Griesbach, and Pietras. Moreover, other courts in this District have found $350 for attorneys Daly and Griesbach and $325 for attorney Pietras to be a reasonable hourly rate for representing this same Plaintiff in other matters. *See* (ECF No. 15); *see also Bank of America, N.A. v. Vegas Dental Corp. et al,* No. 18-CV-23298 (S.D. Fla. Nov. 20, 2018) (ECF No. 34) (awarding attorneys Daly and Griesbach $350/hour and attorney Pietras $325/hour in a default judgment in favor of Plaintiff); *Bank of America, N.A. v. Countryside Veterinary Care, P.A. d/b/a Homestead Animal Hospital and Arthur L. Greene*, No. 1:18-CV-24445-UU (S.D. Fla. Dec. 21, 2018) (ECF No. 13) (awarding attorneys Daly and Griesbach $350/hour and attorney Pietras $325/hour in a default judgment in favor of Plaintiff).

### 4. Reasonable Hours Expended

Having determined the reasonable hourly rates, the undersigned next addresses the reasonableness of the hours expended by the attorneys working on the case. As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment." *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the

skill, reputation or experience of counsel." *Norman,* 836 F.2d at 1301.  Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Barnes*, 168 F.3d at 428.  In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

> *a. Fixed Fee Services (January 2019 to January 2020)*

Between January 8, 2019 and January 15, 2020, counsel rendered services on a fixed fee basis. (ECF No. 11 at 66, 69-70).  The record contains two invoices reflecting the fixed fee services provided by attorney Griesbach:  one invoice dated March 2019, and another dated December 2019.  *Id.* at 69-70.  The March 2019 invoice reflects a fee of $400 for "Large Loan Document Review," $750 for "Large Loan Document Review Report," $400 for "Fixed Fee Task 2-Demand Letter," and $400 for "Simple/No New Collateral." *Id.* at 69.  The December 2019 invoice reflects a fee of $400 for a "Demand Letter," $750 for "Commencement of Case with Summons and Complaint," and $250 for "Evaluation of Bank's Claim." *Id.* at 70.

Based on this Court's review of the record and the Court's own judgment and experience, the fixed fees charged by counsel are not unreasonable.  Although L&G did not keep contemporaneous billing records (given the flat fee arrangement), the billing records reflect that the hourly rate for the attorneys was either $325 (for attorney Pietras) or $350 (for attorneys Daly and Griesbach).  *Id.* at 66-67.  Thus, for the March 2019 invoice, the $1,950 fixed fee would translate to approximately 5.6 – 6 hours expended ($1,950 divided by $325 or $350)).  For the December 2019 invoice, attorney Griesbach provided all services.  *Id.* at 70.  Since attorney Griesbach bills at $350 per hour, the $1,400 fixed fee translates to approximately 4 hours of work.  Based on this extrapolation, the undersigned finds the March and December 2019 fixed fees reflect reasonable time expended on the various services provided by the attorneys.  *See Tec Serv, LLC v.*

*Crabb,* No. 11-CV-62040, 2016 WL 3212253, at *3 (S.D. Fla. Feb. 2, 2016), *report and recommendation adopted sub nom. TEC Serv, LLC v. Toscano*, No. 11-CV-62040, 2016 WL 3189881 (S.D. Fla. Mar. 11, 2016) (attorney fee demand based on flat fee was reasonable where attorney provided estimate of hours worked, from which the court could calculate approximate hourly rate even in the absence of contemporaneous billing records)*; accord Watson v. E.S. Sutton, Inc.*, No. 02-CIV-02739, 2006 WL 6570643, at *12 (S.D.N.Y. Aug. 11, 2006), *report and recommendation adopted as modified*, No. 02-CV-2739, 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007) (". . . although flat fees are usually disfavored, courts in this district have awarded attorneys' fees in fee-shifting contexts where billing was done on a flat-fee basis, as long as the supporting documentation allowed the court to assess who performed the task, the nature of the task performed, and when the task was completed.") (citation omitted).

Nonetheless, the undersigned recommends a reduction to the fees based on certain billing inadequacies. For example, the March 2019 invoice does not identify the attorney providing the services, the date upon which the tasks were performed, and, in at least one instance, does not adequately describe the nature of the tasks performed. *See, e.g.,* (ECF No. 11 at 69) (fee entry reflecting "Simple/No New Collateral"). As to these entries, the undersigned cannot determine the reasonableness or relatedness of the fees requested. Indeed, a court may deduct hours from the time billed if it finds that the billing entries are unacceptably vague and prevent the court from discerning the legal services provided. *Meyrowitz v. Brendel*, No. 16-81793-CV-MARRA/MATTHEWMAN, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018) (citing *Tiara Condo. Ass'n Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1367 (S.D. Fla. 2010)); *see also Bujanowski v. Kocontes,* No. 8:08-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009) (noting that a time entry may be discounted where the description of the work performed

is overly vague). Because the billing inadequacies were relatively few and minor, however, the undersigned recommends an across-the-board 5% reduction to the fixed fee. *See, e.g., Ovalle v. Perez*, No. 16-CV-62134, 2017 WL 7792719, at *4 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted*, No. 16-CV-62134-CIV, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (recommending a 10% reduction for use of block billing, redacted time entries, and redundancy in efforts); *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290 (S.D. Fla. 2017) (adopting recommendation for a 15% reduction in fees based on billing inefficiencies); *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted*, No. 14-CIV-20786, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015)(recommending a 30% reduction to counsel's hours for use of block billing); *see also Bivins*, 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut). Accordingly, the undersigned recommends that Plaintiff be awarded $3,182.50 for services billed pursuant to a fixed fee ($3,350 – $167.50 (5%) = $3,182.50).

        b. *Hourly Fees (January 2020 to March 2020)*

Plaintiff also seeks compensation for 2.5 hours of attorney work, totaling $875, for conducting legal research, drafting legal documents, reviewing court documents, and communicating with Plaintiff between January 16, 2020 and March 15, 2020. *See* (ECF No. 11 at 72-73).

The undersigned has reviewed the billing records and finds that the time spent on these tasks by attorneys Daly and Griesbach is reasonable, nonduplicative, and thus generally recoverable. Nonetheless, an adjustment to the number of hours worked is necessary to account for certain billing inefficiencies. For example, several of the entries are so heavily redacted that

they preclude meaningful review by this Court. *See, e.g.*, *id.* at 72 (1/29/2020 entry (for 0.5 hours) and 2/26/2020 entry (for 0.2 hours) for "several correspondence to/from Kenny Cowan Re: [redacted]"); (2/26/2020 entry (for 0.2 hours) for "telephone conference with Kenny Cowan Re: [redacted]"); (3/3/2020 entry (for 0.3 hours) for "review[] several correspondence to/from Kenny Cowan and Dr. House re: [redacted]"). Although these conversations may well relate to attorney-client privileged communications or to matters that are work-product protected, these vague entries are insufficient to allow the court to determine the reasonableness or relatedness of the hours or work claimed. "A court may deduct hours from the time billed if it finds that the billing entries are either unacceptably vague *or so heavily redacted* that it cannot discern the legal services provided." *Meyrowitz*, 2018 WL 4440492, at *6 (emphasis added) (citations omitted); *see also Bujanowski*, 2009 WL 1564263, at *2 (noting that a time entry may be discounted where the description of the work performed is overly vague). Again, because the billing inadequacies were relatively few and minor, the undersigned recommends an across-the-board 5% reduction to the hourly fees requested. Accordingly, Plaintiff should be awarded $831.25 ($875 – $43.75 (5%) = $831.25).

In total, the undersigned recommends that Plaintiff be awarded $4,013.75 in attorneys' fees ($3,182.50 in fixed fee plus $831.25 in hourly fees).

**E.     Costs**

In addition to attorneys' fees, paragraph 22 of the Term Loan Agreement provides for the award of all "reasonable . . . costs of attorneys employed by Lender for any purpose related to this Agreement . . . including . . . prosecuting any proceedings in which Lender pursues or prevails." (ECF No. 11 at 31). The Term Loan Agreement limits recoverable costs to "the maximum amount permitted under applicable law." *Id.* Moreover, the Court has the discretion to award those costs

specifically enumerated in 28 U.S.C. § 1920, but the Court may not tax as costs anything not authorized by the statute or contract. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987); *see also Pellegrino v. Koeckritz Dev. of Boca Raton, LLC*, No. 08-80164-CIV-MARRA, 2008 WL 6128747, at *2 (S.D. Fla. Nov. 24, 2008).

Here, Plaintiff requests reimbursement of $545.30 in costs. (ECF No. 11 at 71). This includes $400 in filing fees and $72.65 for service of process for each Defendant (totaling $145.30). *Id.*

### 1. *Clerk Costs*

Pursuant to 28 U.S.C. § 1920(1), Plaintiff is entitled to recover $400 for the cost of filing the Complaint.

### 2. *Service of Process*

Additionally, 28 U.S.C. § 1920(1) permits recovery of fees for private service of process, as long as the cost does not exceed the fees permitted by the statute. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1332-33 (S.D. Fla. 2009). Plaintiff requests a total of $145.30 for service of process on the two Defendants (at $72.65 each). (ECF No. 11 at 71). Because Plaintiff did not provide any invoices or additional information to show how the service fee was calculated, the Court is guided by the statutory limits set forth in 28 C.F.R. § 0.114, which provides that fees charged by the United States Marshals Service for personal service of process are $65 per hour. *See Monelus*, 609 F. Supp. 2d at 1333. Consequently, the undersigned finds that Plaintiff should recover $130 for service of process on Defendants ($65 per Defendant served).

In sum, Plaintiff should be awarded $530 in costs ($400 + $130).

### III.  RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Entry of Final Default Judgment Against Defendants THOD and Dr. House (ECF No. 11) be **GRANTED IN PART**. Specifically, the Court should: (i) enter a Final Default Judgment against Defendants THOD and Dr. House; (ii) award Plaintiff $4,013.75 in fees; and (iii) award Plaintiff $530 in costs.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 11th Cir. R. 3-1 (2020); *Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on January 20, 2021.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Kathleen Williams
     All Counsel of Record